UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HENRY LEO MUNOZ,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>MARTIN O'MALLEY, Commissioner of Social Security,[1]<br><br>　　　　Defendant. | Case No. 1:23-cv-00181-BAM<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>(Docs. 12, 14) |

**INTRODUCTION**

Plaintiff Henry Leo Munoz ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits under Title II of the Social Security Act. The matter is currently before the Court on Plaintiff's motion for summary judgment and the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe.[2]

---

[1] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin O'Malley is substituted as the defendant in this suit.

[2] The parties consented to have a United States Magistrate Judge conduct all proceedings in this case, including entry of final judgment, pursuant to 28 U.S.C. § 636(c). (Docs. 5,7, 8.)

1

Having considered the briefing and record in this matter, the Court finds that the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence in the record as a whole and based upon proper legal standards. Accordingly, this Court will deny Plaintiff's motion for summary judgment and affirm the agency's determination to deny benefits.

## FACTS AND PRIOR PROCEEDINGS

Plaintiff filed an application for disability insurance benefits on July 16, 2018. AR 385-97, 388-89.[3] Plaintiff alleged that he became disabled on November 1, 2016, due to a lower back injury. AR 441. Plaintiff's application was denied initially and on reconsideration. AR 152-55, 161-65. Subsequently, Plaintiff requested a hearing before an ALJ, and following a hearing, ALJ Kathleen Laub issued an order denying benefits on May 29, 2020. AR 43-67, 123-37. The Appeals Council subsequently vacated that decision and remanded Plaintiff's claim for further evaluation. AR 145-49. ALJ Laub held a second hearing on November 16, 2021, and issued an unfavorable decision on December 6, 2021. AR 16-32, 68-94. Thereafter, Plaintiff sought review of the decision, which the Appeals Counsel denied, making ALJ Laub's December 2021 decision the Commissioner's final decision. AR 1-6. This appeal followed.

**Plaintiff's Testimony**

Exertion Questionnaire

On August 1, 2018, Plaintiff completed an exertion questionnaire. AR 457-59. Plaintiff reported that he could walk 100 yards, lift 5 pounds maximum rarely, carry a grocery bag 20 feet, and drive up to 1 hour. AR 457-58. He was unable to do chores and could only do housework or other chores for 15 minutes. AR 459.

2020 Hearing

ALJ Laub held a telephonic hearing on April 30, 2020. Plaintiff appeared with his attorney. AR 46. In response to questions from the ALJ, Plaintiff testified that he could not work because of a very painful back injury, which limited his bending, stooping downwards, and moving lateral, side-to-

---

[3] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

side, and forward. He took Celebrex for pain relief, but double the amount. It helped relieve the pain. He was not receiving any other treatment for his back. His treatment throughout 2018 consisted of pain management. In 2017, he had spinal injections after his surgery. The injections worked for about one month and then the pain returned. He stopped the injections because of possible permanent nerve damage that could result with taking the injections too many times. AR 51-53.

Plaintiff reported walking or riding his bike for exercise twice a week for about 30 minutes. Before the pandemic, on a typical day, Plaintiff would take his daughter to school, watch some TV, and pick his daughter up from school and practice. He performed no household chores or yardwork. He attended his daughters meets or games. He drove and grocery shopped. AR 53-55.

When asked about additional surgery, Plaintiff reported that his current doctor was considering surgery down the road. His doctor wanted to see how things went with the medicine and weight loss, saying Plaintiff was too young for surgeries. AR 55-56.

In response to questions from his attorney, Plaintiff testified that the Celebrex relieves most of his pain, but he still feels some soreness and aching. He has difficulty bending, and does not bend to pick things up and uses a grabber around the house. His back also makes it difficult when sleeping. If he stands for too long, his legs will start to get numb, especially his right side. When he is in the shower, he feels numbness under his right foot and right three toes. He is able to lift, but gets tired very easily. He has difficulty walking up and down stairs, and is limited to one flight or story. He does not have any stairs in his home. Other than medication, nothing makes his pain better. Twisting, bending, and crouching activate the pain. He can sit for roughly 30 minutes before it becomes too uncomfortable or painful. He can stand about 15 minutes before his thighs go numb. Plaintiff confirmed that it was his lower back that prevented him from being able to move and function on normal, daily activities. AR 56-59.

Plaintiff additionally testified that he was injured in 2015, and then returned to work on light duty. He sat at the front desk and answered phone calls. It lasted about one month. AR 59-60.

2021 Hearing

Following remand of Plaintiff's claim by the Appeals Council, ALJ Laub held a telephonic hearing on November 16, 2021. Plaintiff appeared with his attorney, Cyrus Safa. AR 70-71. In

response to questions from the ALJ, Plaintiff testified that on a typical day, he takes his daughter to school, showers, and gets ready for the day. He does not do much physical labor, but may make breakfast. He will pick up his daughter after school, take her to practice, and then pick her up from practice. He spends the evening with the family. During the day, he will watch some TV or do some light house duties, like making the bed and taking out the trash. AR 76-77. He does not do dishes, laundry, or grocery shopping. AR 79.

Plaintiff further testified that he attends his daughter's games. She does cross-country and track-and-field and plays basketball. He also attends the away games. When he attends basketball games in the gym, he sits on a cushioned sports seat. At the end of the quarter and halftime, he stands and stretches. He does not sit continuously. AR 77-78, 79.

In response to questions about treatment for his pain, Plaintiff testified that he takes Celebrex, a pain pill medication. He also frequently gets back massages, which help. The Celebrex is effective, and he usually takes two to stop the pain. His doctor is looking into chiropractic work. Acupuncture did not help. His doctor also mentioned additional surgery, but not in the near future. AR 79.

In response to questions from his attorney, Plaintiff testified that he has never played tennis despite a note in his physical therapy records. Plaintiff clarified that before the injury he was very active and played basketball, baseball, and softball, but never tennis. AR 80.

When asked about why he stopped doing light duty work, Plaintiff testified that he had surgery in November 2016, and was not able to go back to work. He was approved for disability retirement. AR 81. His condition is worse after the surgery. If he is standing for 15 minutes, his upper thigh muscles get extremely numb. He cannot feel anything on those upper muscles. He hits them with his hands, trying to get some feeling back. His middle three toes on his right foot also go numb. AR 81-82. The numbness in his thighs is more severe on his right side. AR 82. He feels severe pain when walking and 15 minutes is his limit. His medication does not completely stop the pain, it reduces the pain to a more tolerant level. When he takes the medication, he will still experience the same pain when walking. AR 82-83.

When asked about activities that exacerbate the symptoms, Plaintiff testified that he does not bend over because of excruciating pain. He has handheld devices—graspers—all around the house

4

and even in his vehicle. He cannot do any bending or stooping. He is able to get dressed in the morning, but it is very painful. If he sits down for a duration, his back starts to hurt. It also hurts when he gets up from a sitting position because he is trying to straighten himself. He can sit about 30 minutes. He cannot sit through an entire movie. He probably lifts about 10 pounds at the most because of the back pain. Lying down in the fetal position helps alleviate the pain. AR 83-85. He does not sleep "very good" at night because he constantly feels lower back pain. AR 85.

Plaintiff further testified that he has a bicycle, but has not ridden since his injury or since 2018. AR 86. He did not work after his surgery in November 2016. AR 86-87.

**Medical Record**

The relevant medical record was reviewed by the Court and will be referenced below as necessary to this Court's decision.

**The ALJ's Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff was not disabled under the Social Security Act. AR 19-32. Specifically, the ALJ found that Plaintiff had not engaged in substantial gainful activity since November 1, 2016, the alleged onset date. AR 21. The ALJ identified the following severe impairments: degenerative lumbar disc disease, status post microdiscectomy, and obesity. AR 21-22. The ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the listed impairments. AR 22.

Based on a review of the entire record, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform light work with the following additional functional restrictions: he could never climb ladders, ropes or scaffolds, but could occasionally climb ramps or stairs. He could occasionally crouch and crawl and could frequently balance, stoop, and kneel. He could tolerate occasional exposure to vibration and extreme cold but could tolerate no exposure to hazards such as unprotected heights and heavy mechanical machinery (like a jackhammer or tractor). He must alternate positions or stand and stretch for one minute every 30 minutes, which could be performed at the workstation without interrupting his work. He could sit for two hours at one time and six hours total in an eight-hour day, could stand for two hours at one time and four hours total in an

eight-hour day, could walk for 30 minutes at one time and two hours total in an eight-hour day. He could occasionally operate foot controls with the bilateral lower extremities. AR 22-31. With this RFC, the ALJ found that Plaintiff could perform his past relevant work as a general clerk. AR 31. The ALJ therefore concluded that Plaintiff had not been under a disability from November 1, 2016, through the date of the decision. AR 31.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Servs.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The

burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

### DISCUSSION[4]

Plaintiff contends that the ALJ failed to articulate specific, clear and convincing reasons to reject his testimony. (Doc. 12 at p. 4.)

In deciding whether to admit a claimant's subjective complaints, the ALJ must engage in a two-step analysis. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004). First, the claimant must produce objective medical evidence of his impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Garrison*, 759 F.3d at 1014. If the claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of his symptoms only by offering specific, clear and convincing reasons for doing so. *Id.* at 1015.

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but discounted his statements concerning the intensity, persistence and limiting effects of those symptoms. AR 25. The ALJ was therefore required to provide specific, clear and convincing reasons for discounting Plaintiff's subjective complaints.

The parties appear to agree that the ALJ properly considered the objective evidence when evaluating Plaintiff's subjective testimony. (Doc. 14 at p. 5-6; Doc. 15 at p. 2 ["In response to Munoz' demonstration, the Commissioner first asserts that the ALJ properly considered the objective evidence when evaluating Munoz' testimony (Doc. No. 14, 5-6:9-10). This is a correct statement of law."].) As Plaintiff points out, however, a lack of supporting medical evidence cannot form the sole basis for discounting testimony. *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (explaining "lack of medical evidence cannot form the sole basis for discounting pain testimony"); *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (en banc) (concluding that "an adjudicator may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the

---

[4] The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits. Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

alleged severity of pain."). The Court thus considers whether the ALJ's evaluation of Plaintiff's subjective complaints is supported by other specific, clear and convincing reasons.

As one reason, the ALJ considered that Plaintiff's statements regarding the limiting effects of his symptoms were inconsistent because Plaintiff described performing activities that were "not indicative of a disabling level of functional impairment." AR 25. An ALJ may properly discount a claimant's subjective complaints when the daily activities demonstrate an inconsistency between what the claimant can do and the degree that disability is alleged. *Molina v. Astrue*, 674 F.3d 1104, 1112–13 (9th Cir. 2012) (an ALJ may consider "whether the claimant engages in daily activities inconsistent with the alleged symptoms"), superseded by regulation on other grounds. In this case, the ALJ identified that Plaintiff drives a car daily, including taking his daughter to and from school and sports practices, and attending her games. The ALJ also identified that Plaintiff grocery shops and does some light household duties, including taking out the trash. He also prepares simple meals, showers, and otherwise tends to personal care without assistance. AR 25.

Plaintiff argues that nothing in the activities cited by the ALJ demonstrates an inconsistency with Plaintiff's asserted limitations. (Doc. 15 at p. 3.) Yet, it is evident that Plaintiff's activities, such as driving his daughter to school and practice and attending his daughter's games, are inconsistent with Plaintiff's extreme limitations, including that he lies down for much of the day, he has severe pain with walking, cannot stand for very long, and can sit for only 30 minutes. AR 24-25.

As another reason for discounting Plaintiff's subjective complaints, the ALJ noted Plaintiff's ongoing care with conservative measures. AR 25. An ALJ is permitted to consider evidence of conservative treatment in evaluating a claimant's subjective complaints. *See Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007) (finding evidence of conservative treatment sufficient to discount claimant's testimony regarding severity of impairment); *see also* 20 C.F.R. § 404.1529(c)(3)(iv), (v) (medication effectiveness and treatment history are relevant factors for evaluating a claimant's symptom testimony); *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling."). Here, the ALJ identified that Plaintiff had been treating with conservative measures only, citing treatment plans consisting primarily of medications. AR 25, citing AR 1108-1176, 1426-28. The ALJ also cited

evidence from 2019 that Plaintiff's medication had been helping his back pain considerably and that his physical examinations remained mostly normal without indication of a need for more than conservative treatment.  AR 25, 27, citing AR 1523-24 ("medications have been helping his back pain considerably" and "more aggressive management is not indicated"), 1598 ("Celebrex has been beneficial" and "[n]o more aggressive management is indicated").  As evidenced by the medical record considered by the ALJ, Plaintiff treated effectively with medication, physical therapy, massage therapy, and acupuncture.  AR 27-28, citing AR 1609 ("continues to do well after his physical therapy"), 1611 ("good result" from acupuncture), 1613 ("good progress" with acupuncture), 1615 ("low-grade back symptoms"), 1633 ("doing well" despite ongoing back pain), 1634 ("[n]o additional treatment is indicated at the present time"), 1674 (recommending chiropractic program and "[m]ore aggressive management is not indicated"), 1678-79 ("No additional treatment is indcted at the present time.").

Plaintiff asserts that that the ALJ's statements regarding conservative treatment are not accurate because he underwent epidurals and surgical intervention. (Doc. 12 at p. 10.)  According to the record, Plaintiff underwent epidural injections prior to his alleged onset date (*see*, *e.g.*, AR 607-08 [July 2016 epidural], 618-19 [August 2016 epidural]), and the only surgical intervention occurred on November 1, 2016, his alleged onset date (AR 21, 385 ["Start Date of Disability:  November 1, 2016"], 653-54 [November 1, 2016 surgery]). Plaintiff cites no records identifying further epidural treatment or surgical intervention. (*See* Doc. 12 at pp. 6-7, 10.)  Plaintiff's assertions therefore do not undermine the ALJ's determination that Plaintiff's treatment after his alleged onset date primarily consisted of conservative measures.

As an additional reason for discounting Plaintiff's subjective testimony, the ALJ cited "inconsistencies in the record between [Plaintiff's] recent testimony and other statements, rendering his testimony less persuasive."  AR 25.  An ALJ may employ ordinary techniques of credibility evaluation, such as considering claimant's inconsistent statements and other testimony by the claimant that appears less than candid. *See*, *e.g.*, *Moreno v. Comm'r of Soc. Sec.*, No. 1:19-cv-01580-SAB, 2021 WL 84376, at *6 (E.D. Cal. Jan. 11, 2021) (citations omitted).  Indeed, inconsistencies between a claimant's testimony and conduct, or internal contradictions in the claimant's testimony, are relevant

in evaluating subjective symptom testimony.  *See Bradley P v. Kijakazi*, No. EDCV 21-00298-AS, 2022 WL 5048317, at *4 (C.D. Cal. Mar. 24, 2022), citing *Burrell v. Colvin*, 775 F.3d 1133, 1137 (9th Cir. 2014).  In this instance, the ALJ particularly noted that Plaintiff's activities throughout the record reflected "a greater capacity for physical exertion than to which he recently described."  AR 25.  Specifically, the ALJ indicted that at the prior hearing, Plaintiff stated that he walks for exercise and rides a bicycle around the neighborhood twice a week for 30 minutes.  AR 25.  The ALJ also indicated that Plaintiff reported to his physical therapist that he was feeling good and played tennis over the weekend.  AR 25, citing AR 1487.  He also reported that he was sore one weekend and early in the week due to setting up for his daughter's party, "which required him to do a lot of heavy lifting."  AR 25, citing AR 773.  Additionally, the ALJ noted that in June 2017, Plaintiff reported doing yard work and cleaning his home.  AR 25, citing AR 1043.

Plaintiff faults the ALJ for relying on evidence from 2017 and mischaracterizing the record in several instances.  (doc. 12 at p. 9.)  For example, as to the ALJ's citation to a physical therapy note indicating that Plaintiff played tennis, Plaintiff points to his testimony at the hearing that he "never played tennis in [his] life."  AR 80.  As to the ALJ's citation to a report that Plaintiff was sore due to setting up for his daughter's party, which required him to do a lot of heavy lifting, Plaintiff points out that the chart note from January 2017 indicates only that Plaintiff "stated he was sore over the weekend and early week due to setting up his daughters [sic] party which required him do a lot of lifting, bending, and twisting," not heavy lifting.  AR 773-74.  The chart notes also stated that soreness in Plaintiff's back demonstrated "lack of full strength and endurance in back/core musculature."  AR 774.  As to the ALJ's citation to a report of Plaintiff doing yard work and cleaning his home, Plaintiff points out that the chart note from June 2017 states, "Per the patient, he becomes easily fatigued with typical tasks such as working in his yard or cleaning his home."  AR 1043.  Based on the discrepancies between the ALJ's summary and the statements in the medical records, the Court cannot conclude that this reason for discounting Plaintiff's subjective complaints is clear and convincing.  Nevertheless, the Court finds that any such error is harmless because the ALJ provided other valid reasons for discounting Plaintiff's subjective testimony.  *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161-63 (9th Cir. 2008) (determining that two invalid reasons to reject a claimant's testimony

were harmless error where the ALJ articulated two other reasons supported by substantial evidence in the record); *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) ("several of our cases have held that an ALJ's error was harmless where the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record").

## CONCLUSION AND ORDER

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, IT IS HEREBY ORDERED as follows:

1. Plaintiff's motion for summary judgment (Doc. 12) is DENIED;
2. Plaintiff's appeal from the administrative decision of the Commissioner of Social Security is DENIED; and
3. The Clerk of the Court is DIRECTED to enter judgment in favor of Defendant Martin O'Malley, Commissioner of Social Security, and against Plaintiff Henry Leo Munoz.

IT IS SO ORDERED.

Dated: **January 24, 2024**     /s/ *Barbara A. McAuliffe*
UNITED STATES MAGISTRATE JUDGE